166629 Allen James Howard Sr individually and his next friend of W. H. a minor child et al. v. Timothy Wigenstein arguments not to exceed 15 minutes per side Mr. Bennett for the appellant. Good morning, your honors. May it please the court, I'm Scott Bennett here this morning on behalf of Mr. Tim Wigenstein, the former principal of Halls Middle School. May I reserve two minutes for my rebuttal? Yes. Thank you, your honor. The two overarching questions before the court this morning are whether the plaintiff's complaint states a claim for supervisory liability under 42 U.S.C. section 1983 and whether the complaint also states a claim under 42 U.S.C. section 1983 for a failure to train that rises to the level of a constitutional violation. We respectfully submit that the district court erred in concluding that the plaintiff's complaint did in fact state claims for relief. As this court is aware, in order to establish a claim for supervisory liability under 42 U.S.C. section 1983, the plaintiff's complaint must set forth specific factual allegations, not conclusory statements of law, not conclusory claims that provide no guidance, but rather specific factual allegations that the individual supervisor was aware of specific facts of constitutional violations. Not only that he was aware of violations, but that these violations were substantially likely to occur again in the future, such that his failure to act not only makes him complicit in the subsequent constitutional violation, but he essentially joins in the violation itself as being sort of a co-conspirator, if you will. And that's the key, because under 42 U.S.C. section 1983, there is no vicarious liability. There is no respondeat superior liability. It's not sufficient that a supervisor had been negligent or even reckless. The supervisor's conduct must itself rise to the level of a violation. And so the level of knowledge that the supervisor must have is very, very high. And so when we look at... In reading the complaint, specifically looking at paragraphs 19 to 31, I'm a little bit mystified by what you continue to insist is missing as far as specific information. I mean, if you look at paragraph 28, parents of student peer mentors reported claims of mistreatment and or abuse to the defendant. Paragraph 30, this is the incident where the child was allegedly grabbed and shook. Immediately informed Defendant Wigenstein of continued and unjustified mistreatment and abuse. How much more specific does it need to get? Well, Your Honor, that really is the heart of the question. Is abuse a talisman that triggers knowledge of a constitutional violation, or is it, as we contend, a nonspecific claim? And I think this Court's prior... Sure. Well, let's take the hypothetical situation... You're not saying that child abuse is okay? I'm not saying that child abuse is okay. If there was child abuse, would that, in a custodial setting in a school, would that constitute a constitutional violation? Not necessarily. Because it would have to rise to the level of violating a child's right to bodily integrity. And not every abusive situation, first of all, is reportable abuse under state laws. Nor is it necessarily a violation of a child's right to bodily integrity. And probably the best case in that point, Your Honor, is actually this Court's decision in Sagan v. Sumner County Board of Education, 726 F. Sup. 2nd. Actually, I'm sorry, it's a district court case, but it cites cases from this Court. 868. Let me help you out here. So you're not really saying that the complaint doesn't allege abuse? It does that, right? Absolutely. So your argument, more specifically stated, is that it doesn't allege abuse that rises to the level of a constitutional violation? Yes, Your Honor. That's exactly our point. So where would we, when we're just looking at a complaint under basically notice pleading, where would we be drawing that line? Well, Your Honor, under ICVOL... Are there certain magic words that you have to say? Or are there certain incidences that you have to mention that they fail to hear? Well, under the ICVOL standard, as applied to qualified immunity under Saussure v. Katz, because the whole purpose of developing qualified immunity jurisprudence is to put subsequent actors on notice that failure to act rises to the level of a constitutional violation, there has to be a specific enough allegation that what the perpetrator did was itself a violation of a child's right to bodily integrity. So Judge McKeague has pointed to paragraph 30, forcefully grab her daughter's face and shake it while screaming at her. What more should there have been there to meet ICVOL and Twombly? Thank you, Your Honor. The question there is, since that is the most specific allegation of what Defendant Wiggenstein knew, does that rise to the level of a known constitutional violation? And the answer is no. Sixth Circuit authority is fairly clear that simply yelling at a child is not a constitutional violation. And I believe that plaintiff's counsel will agree with me on that point. All right. How about this one? Paragraph 33. Physically dragging children by their extremities in such a way that the children's heads and or bodies would strike objects, walls, and or the ground, violently throwing or pushing children under corners or walls, so on and so forth. That's not enough? Your Honor, that is absolutely enough. But the problem here is there is nothing in paragraph 33 or 34 that suggests that Defendant Wiggenstein knew about that. What we know for certain is that the allegations against Rebecca Shoemaker in 33 and 34 that she dragged the kids, that she banged their heads against the wall, that she used excessive force on a scale that is just abhorrent and clearly violates the children's rights to bodily integrity. There is no question those allegations state a claim for constitutional violation against Defendant Shoemaker. The problem, however, is that there is nothing in the complaint that says that Defendant Wiggenstein knew about those. And indeed, if you read the- Let me ask the question this way. Let's take an example, and we'll make this a hypothetical so we don't have to worry about this case. In the hypothetical, complaints about abuse are made to a principal. Now, I'm not saying constitutional abuse. Had the principal investigated, the principal in my hypothetical would have discovered that that abuse rose to the level of a constitutional violation. Does that then, in my hypothetical, state a claim? If the principal- I wouldn't say under your hypothetical, no. If the principal investigated and then learned that the- All right. Add to my hypothetical the principal didn't investigate. There's an allegation of abuse. The abuse isn't stated to be whether it is or is not of a constitutional dimension. Principal doesn't investigate. Had the principal investigated, the principal would have clearly and easily learned it was of a constitutional dimension. I think this- You get qualified immunity in that case. I think this court's answered that question in Doe v. Claiborne County Board of Education. In that situation, the individual defendants were actually aware that a child had accused the coach of fondling her breasts. They were actually aware that the Department of Human Services had nine complaints of child sex abuse by the coach. In that case, they were actually aware that four of those complaints were founded. They suspended the coach. They did not rehire him for the following year. But the subsequent year, they did rehire him. And while they put some systems in place, they did not prevent him from having unmonitored conduct with minor children. In that situation, this court still granted the individual defendants qualified immunity, saying that, nor did they authorize, approve, or knowingly acquiesce in Davis's unconstitutional conduct. They had no knowledge, constructive or otherwise, that Davis was abusing Doe, was abusing that plaintiff. And so, we get to this, we get really to the core of the question, is abuse, is even the word physical abuse a talisman that automatically triggers notice that a constitutional right is being violated? And clearly- Does it matter in our analysis, while we're discussing this, that there are special needs kids that are involved, some of which can't apparently take care of themselves? No, Your Honor, it doesn't matter. Because the issue, you're making a great argument that Mr. Wigginstein was negligent. You could even make the argument that his conduct was negligent to the point of being unprofessional, such that it might affect his licensure. But the problem here is, under Sassia v. Katz, we have to ask the question, did Mr. Wigginstein actually know ahead of time that there were ongoing constitutional violations? And again, the word abuse is not a term of art. Let's suppose we have a coach. A parent complains the coach is abusive. What do you mean the coach is abusive? He yells at my kids. Well, pretty clearly, simply yelling does not rise the level of a constitutional violation. It's not even reportable under state law. Well, not only that, but in addition to yelling at my kids, this coach is making the kids run, and run a lot. Well, we would all agree that a parent legitimately would believe that the coach was being abusive. However, we would not agree that that would be a reportable offense under most state laws, and it certainly wouldn't rise to the level of a constitutional violation. And again, to your point, Judge McKee, the question here of whether the trip constitutional violation comes into play, with whether the abuse is of such a nature that it indicates that there's been a violation of a child's right to bodily integrity. That is the key. And so, Judge McKee, to answer your question again, if you look through the complaint and you look to see if there's a specific factual allegation that satisfies Twombly and Iqbal, it raises the question of whether Wigginstein knew that these children rights to bodily integrity were being violated prior to 33 and 34 in the complaint. The answer is no. As a matter of fact, there... So you're saying that the reports to Wigginstein have to be sufficient for Wigginstein to know, believe, understand that it had already risen to the level of a constitutional violation? Until that, he doesn't have to do anything? He doesn't have a constitutional duty to do anything, Your Honor, because, again, for supervisory liability to occur, it's not enough that there is a concern about Shoemaker's performance. There has to be notice that there is a constitutional violation that is substantially likely to occur, because that is what triggers his obligation. So then you're saying that these different reports, or let us say, or discussions with the Teacher of the Year and the peer mentors and the parents, he could have believed that they simply weren't that bad and therefore he didn't constitutionally need to do anything. Is that the thrust of your argument? Yes, Your Honor. He didn't constitutionally need to do something. Now, do we concede that Yes, we do. But that is a different question from whether his failure to investigate makes him effectively a co-participant. And does that not make it, at least given from my reading of the record, that there were a lot of reports of a lot of, we'll call it, bad stuff? A factual matter as to how bad the bad stuff was. I mean, we have a lot of these qualified immunity cases where we just say, based on one side's facts, it's okay. Based on the other facts, it's a constitutional violation to go to trial. So here, given all of this, do we say the degree of the reports is a factual matter? Why would you not say that? Well, first, Your Honors, I notice my time has expired. May I have a moment to answer the question? Thank you. Your Honor, really the meat of your inquiry is, is there ever a situation in which the weight of nonspecific claims, none of which individually rise to the level of a constitutional violation, is there ever a situation in which the weight of these nonspecific, non-14th Amendment invoking charges rises to the level that it pushes things over to create a constitutional question? We would say no, simply because, under Saussure v. Katz, the standard is not whether there's smoke, there might be fire. The standard is whether a reasonable actor in the shoes of the defendant would have known that he had a constitutional duty to do something different. And because jurisprudence is predicated upon specific factual allegations, specific claims... So the specific things, for example, as I understand it, the mother of W.H. Witness Shoemaker grab a head and shake while screaming at her, you just say, well, since that incident itself might not be enough, then you don't have to weigh any things together? Is that the... Your Honor, I believe, and again, I'm aware that my time has expired. Your Honor, again, I believe under the district court, I'm sorry, yes, the district court case of Sagan v. Sumner County Board of Ed, in that situation, the judge looked at a claim where a child had soiled his pants, had defecated, and had done it repeatedly. And the teacher had taken the soiled pants and had made the child smell the child's own feces. The court said, clearly inappropriate, clearly offensive, clearly problematic, but it does not rise to the level of violating the child's right to bodily integrity. So that incident did not trigger constitutional concerns. All sorts of other concerns, but not constitutional concerns. And so, Your Honor, I make the case, because I believe that's what the law does, that this one incident that's set forth in paragraph 30 is not sufficient to have triggered a constitutional duty upon Wigginstein to do more. Now, professionally, should he have done something more? Absolutely. Would it have been a good thing for him to have done something more? Clearly. Will the question. But, does that one specific allegation, the only specific allegation of what Wigginstein knew, does that rise to the level of a constitutional violation? We submit it does not. Thank you. Thank you, mate. Please report. John Cope from the Tennessee Bar. I think what we have here, we're almost splitting hairs, or at least the appellant's trying to split hairs on the definition of physical abuse. And this is a motion to dismiss. The appellant keeps referring to certain cases, but those are all decided under a motion for summary judgment standard, including the Doe v. Claiborne case that he recently quoted. I'll just jump right to it, though. We've talked about certain paragraphs. If you look directly, the complaint has a timeline. It starts out at the very beginning, when this teacher's assistant was hired. Obviously, there was a reprimand when she was a teacher's assistant at the very beginning at a different school, and that's paragraph 19. You start from there and she's reprimanded, basically because she can't handle frustrating situations. She can't follow supervisors' directions. She doesn't have a good report with kids and parents. That starts it off. Now, is that alone? Absolutely not. We wouldn't be here. But then that leads into she was transferred to Halls Middle School, where the school this happened. That's paragraph 20. At that point in time, Wigenstein accepted the transfer as the principal, and under the statutory duty, he has the right to assign specific duties to teacher's assistants. What does he do? He assigns her as the direct assistant to L.R. That's where it starts, because this teacher's assistant had absolutely zero training or education with special needs students. Zero. That's stated throughout the complaint. You get to paragraph 22, and I think that's where it really starts and is sufficient to even defeat this motion. If you look at paragraph 22, it says the Rosaskos, they're the parents of L.R., made numerous complaints to Knox County Schools, its administration, and Defendant Wigenstein. Numerous complaints, including a verbal and physical abuse inflicted upon the vulnerable and defenseless L.R. by Shoemaker, and basically it goes on that they did nothing. That starts it. I guess what Appellant's trying to say is you need to be more specific there. We're dealing with special needs children. The allegation is physical abuse. To me, that is not a conclusory statement. A, when you're in my brief, there is a heightened duty. You take that alone, and there's physical abuse. That principal is on notice. He has knowledge. It's physical abuse. Investigate it. He does nothing. But we don't stop there. You go on. You go on to paragraph 23. This is where the Rosaskos notice physical problems with the bruising on the child's knees. They also notice and discover that the child has been isolated for rooms because Shoemaker doesn't like to take her to the restroom. She's wheelchair bound. And they threaten legal action. So right there, Mr. Principal, Mr. Wigenstein, what do you do? He reluctantly agrees to put a new direct assistant. And where does it stop? He doesn't investigate. He doesn't offer more training. He doesn't do anything except promote her. He promotes her to a CDCA classroom full of special needs children. So now you take these bricks and you're just piling them up on top of each other. And it's clear a reasonable person in this situation would know that there's a strong likelihood when a teacher's assistant has been reported to have physical abuse of one child, there's a strong likelihood that when you promote her and don't train her and place her in a classroom full of frustrating situations with special needs children, what's going to happen? Is there a problem that, as I see looking at paragraph 23, Wigenstein is not mentioned specifically but it's defendants? Could it be some other defendant than Wigenstein? That's a good point. And you look at the defendants in this case, the only defendant that's in control of this school is Wigenstein. The other defendants besides Schumacher being the teacher's assistant is Knox County and everything above Wigenstein. So it's his school by statute. He's in charge of it. And so when defendants being plural, obviously he's in control of it. You lead on, though, after the complaint goes on. So after noticing this and threatening legal action, she is placed into the CDCA classroom. Now at that point in time, on paragraphs 25 and 26, this is the teacher of the year that finally resigns. So Schumacher was in there in the classroom. The teacher of the year resigns. She has two exit interviews. She specifically tells Wigenstein that Schumacher needed to be removed immediately. She mistreats students, made Wigenstein promise that the kids would not be hurt. That's in the complaint and allegation. He actively made a representation that he would protect the children. Those are allegations. So we get back to this is a motion to dismiss standard. Have I asserted enough allegations to make a plausible inference of wrongdoing? Well, if I understand what Pellant is saying, I haven't because you didn't really go into what physical abuse of a minor child that is non-verbal and is a special needs. You didn't add more. Well, on a motion to dismiss, you can take an inference that physical abuse of a special needs child, just those words alone is a constitutional violation. You should have done something. The facts, as alleged, show that Wigenstein, he flat out did nothing. What then goes on after that, after the teacher of the year, there are continued reports of abuse. It doesn't stop. Paragraph 28. Even before that, you have the peer mentors reporting to Wigenstein of abuse. Paragraph 28, parents of the peer mentors. Still, nothing is done. No investigation. No training. Then on paragraph 30, Ms. Howard sees what is being done to her child by the shaking and yelling. That is just another brick in the wall, so to speak. The reports of complaints, you have other parents, you have peer students, you have parents of peer students, you have teachers of the year, and then you have Ms. Howard. What we have, and you lead to, is then finally in September of 2014, you have an anonymous letter saying there has been systemic and physical abuse. Again, physical abuse by a shoemaker for an entire year. Finally, that anonymous letter, though, is given to the DCS and the Knox County Sheriff's Department. They investigate within seven days. Done. She's removed. She's resigned. Abuse stopped. She's later, as alleged in the complaint, she's obviously criminally charged and pled guilty. Now, the issue here today is under supervisory liability. I understand that it's not vicarious, and I'm not trying to get to vicarious liability. I'm not even trying to get to negligence. What we're saying here is what this court has said is that it must be some type of active unconstitutional behavior. To meet there, there's certain ways to get to that active definition. That is, did Wittgenstein, at a minimum, implicitly authorize or approve of Ms. Shoemaker's conduct? To get there, and I'll cite Doe v. Claiborne for this point. Doe v. Claiborne stated, again, that was a motion for summary judgment. On this law here, it says, the plaintiff must show that in light of the information possessed by the defendant, that the teacher who engaged in the abuse showed a strong likelihood that she would attempt to abuse other students. Well, you've got physical abuse allegations over and over and over again. That strong likelihood factor is what gets you above the negligence, and that gets you into the constitutional violation. But you have that with all of the notices and knowledge. It's clearly a reasonable inference that Wittgenstein's failure to investigate, discipline, at least implicitly infers his approval or that he condoned this, at least for a motion to dismiss standard. The other case that I cited was, and I may pronounce this, and Judge Boggs, I think you were involved in this, Ontho v. Rutherford County. And on that case, I believe it's 504 of that case, but this court said, liability attaches only a constitutional violation as part of a pattern of misconduct or where there is essentially a complete failure to train the police force or training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to occur. That almost kind of goes back with the strong likelihood. Well, so you have two parts there. You're sort of veering off now into failure to train, and it seems to me an element of failure to train is always including the concept that training would have made a difference. It's hard to believe that if this woman really did all of the things that she is alleged to have done with respect to these kids, and I understand she pled guilty to something, that having a training session saying you can't shake kids, you can't drag them along by their extremities, I mean, it's just hard to believe that training would have made a Well, you have, it's basically excessive force. She already has problems handling frustrating situations. What training does? You're saying when she knew what a continuum of force was that you could use in a school custodial setting, then maybe she wouldn't have abused them? Is that the idea? Well, Tennessee has specific statutes dealing with special needs children and restraints, for one reason, when there are certain emergency situations because you have difficult situations with special needs children. It takes a level of patience. As I stated in my brief, one part of training is the weed out, so to speak. People that can't do not have that special skill to be able to have the patience to deal with special needs and also have the heart, but you also have, there is special training, as I believe it's 4910-1301, obviously dealing with special needs and restraints. What's your best case for training being a weed out exercise? Common sense. The best case, obviously for any type of training, you're going to see whether the person has patience or not for this type of situation. I can't cite a case right off hand for the weed out. But I suppose training should give people coping skills, give the aides and the teachers skills as to how to defuse a situation if a child is misbehaving, for instance, rather than punishing the child to redirect the child to some more acceptable activity, things like that. Absolutely. There's a reason why we have training. It's almost like the police and excessive force, it's the same thing. The fact that you cross that line and continue, there's training so you don't cross that line. In this situation, dealing with something as delicate as special needs children, there's reasons why special needs teachers go to special training. Then you have these statutes that you get certified about restraints for special needs children. But in this type of situation, you put a teacher's assistant with absolutely no experience and no training. The complete lack of training in anything, Judge McKeague, I think is applicable in this situation. Probably the best answer is it's a motion to dismiss stage. It is. It is. That's why you get lots of the cases and a lot of the points the appellant has made all come from motions for summary judgment, which down the road, I know if your honors uphold this, uphold the district court that I'm going to face and I'm going to have to prove and get it over. But at this point in time, I believe you've taken all the inferences in the plainest favor. Judge Varlin was correct in denying the qualified immunity. The case that I believe, I've tried to look back at specific cases recently, the Patras case, I may be pronouncing that V. Memphis, I think it dealt with a motion to dismiss. In that case, it dealt with the sheriff over in Memphis dealing with the failure to investigate. There was officer shootings and so forth. Did he take serious the excessive force allegations and there was failure to train? If you take the facts of that case and the allegations contained in that complaint, they fit into this case. The appellant's state well in that one and their reply brief stated, well, there was 54 shootings and 18 deaths. Those are prior notices of potential excessive claims, excessive force, where in this case, there are allegations in the complaint that there was repeated claims of physical abuse. For the motion to dismiss standard, the Patras case, I think fits this one pretty fairly. Unless your honors have any further questions. Thank you. Briefly, your honors, the case turns upon really the standard of review for a motion to dismiss as it relates to a section 1983 cause of action. Saucier v. Katz says that the relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. And so what we have to ask is, does the plaintiff's complaint set up more than defendant unlawfully harmed me? And so let's change the phrase physical abuse throughout the complaint to violation of bodily integrity. Let's change that throughout because I think the case law is clear. Physical abuse standing alone does not violate the Constitution unless it actually implicates the question of someone's bodily integrity. I just think you're just going down a really dangerous path here on behalf of schools where you seemingly want to say that if parents come to a principal and say that my child has been physically abused, that if that's all they say, the principal can say, whoop, not enough. I don't have to investigate and I'm not going to be able to be held deliberately indifferent because you didn't tell me enough specifics for me to know that this rises to the level of a constitutional violation. Is that really what you want a court to say? Your Honor, perhaps I've not been clear, but I think you've been really clear. I'm just asking you, you really want us to say what I just said? Well, Your Honor, what I'm saying is there's a line of demarcation between abuse that rises to the level of violating the Constitution, which absolutely schools want their officers to investigate that, as compared to allegations that implicate a duty to report under Tennessee law and implicate a duty to investigate under Tennessee law. Suppose that the allegation in the complaint is that the parent went to the principal and said Shoemaker is hitting my child with a board. Would that be a ... Absolutely, absolutely that implicates a constitutional question. There's no question about that. How about it? He just goes and says he's hitting my child. Doesn't say with an open palm, a fist, a board. You never hit special needs children. That is absolutely a constitutional violation. Our problem, Your Honors, is if you look throughout this, they haven't even said that the abuse that Wigenstein knew of rises to the level of violating bodily integrity. There is the statement of shaking the head. This is the paragraph 30 that we started with at one point. Yes, Your Honor. I see my time has expired. Yeah, you can answer. Forcefully grab her daughter's face and shake it while screaming at her. Your Honor, I believe that the case law is clear that simply yelling at a child does not implicate constitution.  Right. It's forcefully grabbing her daughter's face. Arguably, the addition of that word forcefully suggests that there is a problem because you've told us just moments ago that you never hit a special needs child. Never hit a special needs child. Well, and so, Your Honor, again, we look at the Sagan case, where there were ... That's a district court. It's a district court case, but I believe that the argument, though, is still very persuasive in that you have a situation where a child is being mistreated, but it doesn't rise to the level of violating the child's bodily integrity. You have to ask the question, if taking a child's face and forcefully and yelling at the child to get the child's attention, does that necessarily implicate a constitutional right? The answer is, as to Shoemaker, yes. Now, if we have repeated situations ... Does, as to Shoemaker, implicate a constitutional right, but not as to Wiggenstein? Your Honor, I would say that if what we're talking about is a repeated conduct of where she is shaking a child repeatedly, and she's using that as a substitute for disciplinary protocols, then I think if Wiggenstein is aware of that over time, and it is alleged that he's aware of that over time, then at some level, we absolutely concede it triggers constitutional problems. But that's not in the complaint, and that's the problem, Your Honor. Thank you. We've taken you ... Thank you, Your Honor. ... out of your time. Thank you very much, both of you. The case will be submitted, and would the clerk ...